No: 2024-2256

---

## UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

---

LARRY GOLDEN
*Plaintiff-Appellant*

v.

The United States
*Defendant-Appellee*

**RECEIVED**

SEP 13 2024

United States Court of Appeals
For the Federal Circuit

---

ON APPEAL FROM THE UNITED STATES COURT OF
FEDERAL CLAIMS IN GOLDEN v. THE UNITED STATES
[DEFENSE THREAT REDUCTION AGENCY]
IN 1:2023cv00811-EGB; JUDGE ERIC BRUGGINK

---

## PLAINTIFF-APPELLANT'S REPLY IN SUPPORT OF PLAINTIFF-APPELLANT'S MOTION FOR SUMMARY AFFIRMANCE

LARRY GOLDEN
740 Woodruff Rd., #1102
Greenville, S.C. 29607
(864-288-5605)
Atpg-tech@charter.net

Appearing ProSe

September 12, 2024

**SINCE JUDGE BRUGGINK'S DECISION IN *GOLDEN v. US* CASE NO. 13-307C; NINE FEDERAL JUDGES DETERMINED THE UNITED STATES DIRECTLY INFRINGED GOLDEN'S PATENTED INVENTIONS COMBINATIONS AS A "SINGLE ENTITY' UNDER 28 U.S.C. § 1498(a)**

| # of Judge(s) | Case Number | Case Title | Court | Filed - Closed |
|---|---|---|---|---|
| Judge Bruggink | 1:2013cv00307 | Golden v. USA | U.S. Court of Federal Claims | 05/01/2013 - *11/10/2021* |

| # of Judge(s) | Case Number | Case Title | Court | Filed - Closed |
|---|---|---|---|---|
| Three Appellate Judges | 2022cvpri01267 | Golden v. Google LLC | U.S. Court Of Appeals, Federal Circuit | 12/16/2021 - *09/08/2022* |
| One District Judge | 3:2023cv00048 | Golden v. Samsung Electronics America, Inc. | California Northern District Court | 01/05/2023 - *06/08/2023* |
| Three Appellate Judges | 2023cvpri02120 | Golden v. Samsung Electronics America, Inc. | U.S. Court Of Appeals, Federal Circuit | 07/07/2023 - *02/12/2024* |
| One District Judge | 3:2022cv05246 | Golden v. Google LLC | California Northern District Court | 09/14/2022 - *04/03/2024* |
| One District Judge | 3:2022cv05246 | Golden v. Google LLC | California Northern District Court | 09/14/2022 - *04/03/2024* |

Under 28 USC § 1498, the patentee's "exclusive remedy for an alleged infringement by or for the Government, which means the Government is the 'single entity' for the purpose of direct infringement, is a suit against the United States in the Court of Federal Claims."

The statue serves two purposes: (i) it waives sovereign immunity to permit a patent owner to recover damages for direct infringement "by or for the United States" as the single entity, and (ii) it protects contractors [such as Draper Laboratory, Inc. and Google, LLC] from liability for patent infringement committed on behalf of the United States.

The courts emphasized that the remedy provided in § 1498 is the "exclusive remedy" available when the U.S. Government, as the single entity, directly infringes a patent. A recent trend of Federal Circuit decisions, including *IRIS Corp. v. Japan Airlines Corp.*, 769 F.3d 1359 (Fed. Cir. 2014) and *Zoltek Corp. v. United States*, 672 F.3d 1309 (Fed. Cir. 2012), holding that § 1498 affords government contractors a wide scope of protection against liability for infringement.

In the words of the Federal Circuit, there is "no justification" for "expos[ing] a significant range of government contractors to direct liability (and possible injunctive remedies), namely, those [that may be] accused of indirect infringement of claims [that are] directly infringed by the government."

On September 17, 2015, the Federal Circuit affirmed the dismissal under 28 U.S.C. § 1498(a) of a patentee's claims for indirect patent infringement against government contractors where the only alleged directed infringement was the Government's purported use of the patented invention. *Astornet Technologies Inc. v. BAE Systems, Inc.*, No. 14-1854 (Fed. Cir. Sept. 17, 2015). The decision is another in a line of recent Federal Circuit decisions reaffirming that government contractors enjoy broad immunity from traditional patent infringement liability under § 1498.

**The United States Court of Appeals for the Federal Circuit Judges in *Golden v. Google, LLC*, Case No. 22-1267; determined Direct Infringement by or for the Government, arises when there's a combined ATAK Software; CBRN Plugins; CPU; and Smartphone**

The Federal Circuit in *Larry Golden v. Google LLC*; Case No. 22-1267 examined and determined Golden has described how the Google "smartphone", that include the ATAK software and CBRN plugin sensors allegedly infringes at least claim 5 of Golden's '287 Patent; claim 23 of Golden's '439 Patent; and claim 1 of Golden's '189 Patent.

**The United States Court of Appeals for the Federal Circuit Judges in *Golden v. Samsung* Case No. 23-2120; agreed with the Northern District of California Court Judge in *Golden v. Samsung* that Direct Infringement by or for the Government arises when there's a combined ATAK Software; CBRN Plugins; CPU; and Smartphone**

In *Golden v. Samsung Electronics America, Inc.* Case: 23-2120, Document 28; *OPINION* filed for the court by Prost, Circuit Judge; Taranto, Circuit Judge and Chen, Circuit Judge. Filed: 02/12/2024.

"Mr. Golden's complaint alleged, in part, that Samsung's smartphones possess that claimed detector/sensor functionality on three alternative bases: (1) through the "Android Team Awareness Kit, ATAK," which is "[b]uilt on the Android operating system," involves "plug-ins" and "app specific software," was "[i]nitially created" by the "Air Force Research Laboratory" together with the "Defense Threat Reduction Agency," and is "available to warfighters throughout the DoD," Appx112 ¶ 55; Appx119, 127; (2) through add-on devices or modifications that utilize the smartphone's built-in camera, Appx111 ¶ 54, Appx124–25; and (3) through nine "standard sensors" which "can be used as 'biosensors,'" Appx126."

"Samsung moved to dismiss Mr. Golden's complaint, arguing that, among other things, Mr. Golden's complaint failed to plausibly state a patent-infringement claim. Appx146–48. More specifically, Samsung argued that Mr. Golden's complaint stated no alleged facts that went beyond allegations that Samsung was making and selling smartphones that could be modified post-sale by others to perform the accused detector/sensor functionality. On that basis, Samsung said, there are no plausible allegations Samsung was engaged in directly infringing activities. Appx146–47."

"The district court agreed and dismissed Mr. Golden's complaint with prejudice, concluding, in part, that "[t]he allegations that his patents cover the identified functionalities included in Samsung's products are wholly unsupported and implausible on their face." Golden, 2023 WL 3919466, at *2."

"We reject Mr. Golden's appeal arguments and therefore affirm the district court's dismissal of his complaint."

**The Northern District of California Court Judge Haywood S. Gilliam, Jr. in *Golden v. Google, LLC*, Case No. 22-5246; determined Direct Infringement by or for the Government arises when there's a combined ATAK Software; CBRN Plugins; CPU; and Smartphone**

In *Larry Golden v. Google, LLC* NDC Case 3:22-cv-05246-RFL "Order Granting Motion to Dismiss with Leave to Amend" Document 41 Filed 08/10/23; the then presiding Judge Haywood S. Gilliam, Jr. agreed with the Defendant [Google] that the Google Pixel devices could only infringe Golden's asserted patents if a user were to add the additional ATAK application and CBRN plugins.

4

**The Northern District of California Court Judge Rita F. Lin in *Golden v. Google, LLC*, Case No. 22-5246; determined Direct Infringement by or for the Government arises when there's a combined ATAK Software; CBRN Plugins; CPU, and Smartphone**

In *Larry Golden v. Google, LLC* NDC Case 3:22-cv-05246-RFL "Order Granting Motion to Dismiss and Denying leave to File a Surreply" Document 68 Filed 04/03/24; the current presiding Judge Rita F. Lin agreed with the Defendant [Google] that the Google Pixel devices could only infringe Golden's asserted patents if a user were to add the additional ATAK application and CBRN plugins.

**Judge Bruggink's decision on 11/10/2021 in *Golden v. US* Case No. 13-307C became "*MOOT*" when on Appeal in *Golden v. Google* Case No. 22-1267; determined on 09/08/2022 Direct Infringement by or for the Government, arises when there's a combined ATAK Software; CBRN Plugins; CPU; and Consumer Device**

As the Court explained in its 1950 opinion in *United States v. Munsingwear, Inc.*, "[t]he established practice of the Court in dealing with a civil case from a court in the federal system which has become moot" on appeal or before the Court has issued its "decision on the merits is to reverse or vacate the judgment below and remand with a direction to dismiss." *United States v. Munsingwear, Inc.*, 340 U.S. 36, 39 (1950). (analyzing the *Munsingwear* rule); *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 22 (1994) (describing *Munsingwear* as "[t]he leading case on vacatur"); *Great W. Sugar Co. v. Nelson*, 442 U.S. 92, 93 n.* (1979) (per curiam) ("*United States v. Munsingwear, Inc.*, is perhaps the leading case on the proper disposition of cases that become moot on appeal."). Disposing of a moot case in this manner thereby:

> "[c]lears the path for future relitigation of the issues between the parties and eliminates a judgment, review of which was prevented through happenstance."

Put another way, the *Munsingwear* procedure for disposing of cases that become moot on appeal "prevent[s] a judgment, unreviewable because of mootness, from spawning any legal consequences," and thereby ensures that the federal appellate courts, rather than individual litigants, have the last word on the answers to legal questions.

Judge Bruggink's decision became "*moot*" when nine judges, six from the Federal Circuit and three from the Northern District of California, acknowledged the "U.S. Government", the single entity under 28 USC § 1498 for direct infringement, is more likely than not, the direct infringer because the element-by-element requirement is only satisfied under 28 USC § 1498 when Golden's entire patented invention combination is made and is "suitable for use".

**THE ISSUES-PROVISIONS ESTABLISHING GOVERNMENT DIRECT INFRINGEMENT UNDER 28 U.S.C. § 1498(a) IN *GOLDEN v. US* CASE NO. 13-307C WAS NEVER DECIDED**

Issue preclusion applies only to matters actually decided in the related referenced *Golden v. US* Case No. 13-307C; claim preclusion extends to claims that could have been decided in the related referenced *Golden v. US* Case No. 13-307C. Following is a list of issues that was never decided, and claims that could have been decided in the eight years the Claims Court dragged out this case, but never were:

- Qualcomm as the prime contractor in the *Cell-All* initiative, responsible for the manufacture of Golden's patented new, improved upon and useful cell phone capable of CBRNE detection was never decided; but could have been decided because Golden raised the claims on several occasions.

- Qualcomm as the prime contractor in the *Cell-All* initiative, responsible for the assembly of Golden's patented new, improved upon and useful cell phone, Golden's patented central processing unit (CPU), and Golden's multi-sensor detection devices was never decided; but could have been decided because Golden raised the claims on several occasions.

- Qualcomm, Google, Apple, Samsung, and LG as the cell phone manufacturers, responsible for the inclusion of Golden's patented locking mechanism set to engage (lock), disengage (unlock), and disable (make the device unavailable after several failed attempts to unlock) the cell phone manufacturers alleged infringing products' lock was never decided, but could have been decided because Golden raised the claims on several occasions.

- Qualcomm, Google, Apple, Samsung, and LG as the cell phone manufacturers, responsible for the inclusion of Golden's patented multi-sensor detection devices "native" to the manufacture of the cell phone (camera sensor internal the alleged infringing product, and the smartwatch external the alleged infringing product) was never decided, but could have been decided because Golden raised the claims on several occasions.

- The CPU as an element of the alleged infringing device and/or a patent claim limitation of the asserted patent claims was never decided; but could have been decided because Golden raised the claims on several occasions.

- Genel's "implied authorization" and "grant of "authorization and consent", as a subcontractor to NASA, for the use and manufacture of any of Golden's patented CBRNE inventions was never decided; but could have been decided because Golden raised the claims on several occasions.

- Apple as a private entity directly infringing Golden's patented inventions under 35 U.S.C. § 271(a) as a necessary predicate to directly infringing Golden's patented inventions under 28 U.S.C. § 1498(a) was never decided; but could have been decided because Golden raised the claims on several occasions.

- Apple, who was contracted under a cooperative agreement, and performing work for the government, with the implied authorization of the government to equip Golden's patented new, improved upon and useful cell phone with certain security features that are covered in Golden's patented inventions, such as: fingerprint and facial biometric technology, lock disabling mechanism, near-field communication (NFC), and advanced GPS location and tracking was never decided; but could have been decided because Golden raised the claims on several occasions.

*Res judicata* and claim preclusion require a final judgment. But here, the prior judgment, though challenged on appeal, was dismissed on "*mootness*" grounds. A dismissal solely on mootness grounds does not result in a final judgment "on the merits" as required to apply the doctrine of res judicata. Published opinion in *Parkford Owners for a Better Community v. Windeshausen* (D3 Jul. 14, 2022 No. C094419) 81 Cal.App.5th 216. *(Exhibit A)*

Claim preclusion requires a final judgment on the merits, while issue preclusion requires a final adjudication of an issue. (*Samara v. Matar* (2018) 5 Cal.5th 322, 324.) Here, the court held that an appeal challenging the trial court's conclusions, and then decided by the Court of Appeal, but decided on appeal solely on "a purely procedural or technical ground distinct from an actual determination of the merits," does not result in a judgment on the merits for purposes of *res judicata* or preclusion. A dismissed appeal is not "on the merits" if the dismissal was for "mootness".

The Supreme Court has stated that [added: Golden] as a litigant have "a 'continuing duty to inform the Court'" of intervening events that could potentially render a case moot. For many years Golden has complied with the Supreme Court's decision. *See, e.g., United States v. Juvenile Male*, 564 U.S. 932, 933–34 (2011) (per curiam) (deeming case moot even though "[n]o

7

party had raised any issue of mootness [], and the Court of Appeals did not address the issue *sua sponte*"); *St. Paul Fire & Marine Ins. Co. v. Barry*, 438 U.S. 531, 537 (1978) ("At the threshold, we confront a question of mootness. Although not raised by the parties, this issue implicates our jurisdiction."); *North Carolina v. Rice*, 404 U.S. 244, 246 (1971) (per curiam) ("Although neither party has urged that this case is moot, resolution of the question is essential if federal courts are to function within their constitutional sphere of authority)."

Senior Judge Bruggink personally destroyed any and all possibilities of Golden proving, under § 1498(a), that Golden's entire patented combinations had been made by the combined efforts of the third-party contractors, and is "suitable for use" *FastShip, LLC v. United States.*

Singling out Apple and using Apple to preclude future cases (i.e., DTRA ATAK CBRNE Plug-ins and DoD JPEO-CBRND) is a serious flaw in adjudicating cases under 28 U.S.C. § 1498(a) when excluding components hinders a product from being "suitable for use".

| THE GOVERNMENT'S REQUEST FOR GOLDEN'S PATENTED INVENTION(S) COMBINATIONS - CONTRACTORS | | | | |
|---|---|---|---|---|
| | **Central Processing Unit (CPU)** <br><br> CPU / SoC Processor / Chipset | **Communication Device** <br><br> Smartphones, PCs, Laptops, Tablets | **Detection Device** <br><br> Placed In, On, Upon, Adjacent – i.e., Plugins | **Stall, Stop, Vehicle Slow-Down System** <br><br> Remote, Cellular, Satellite, Pre-Programmed |
| **DHS** *(Cell-All)* | Qualcomm Apple Google | Apple Samsung LG Qualcomm | SeaCoast Rhevision NASA Synkera Qualcomm | X |
| **DTRA** **(ATAK)** | DTRA Qualcomm Apple Google Microsoft | Google Apple Samsung LG Qualcomm | Draper | Draper |
| **DoD** **(JPEO-CBRND)** | Draper DTRA Google Apple Microsoft | Google Apple Samsung LG Qualcomm | Draper | Draper |

**GOLDEN'S "FOUR" PATENTED INVENTION(S) COMBINATIONS ASSERTED IN THIS CAFC CASE NO. 24-2256 *GOLDEN v. US* WAS NEVER ADJUDICATED AND THEREFORE CANNOT BE DISMISSED FOR ISSUE PRECLUSION**

Golden is not "precluded" from asserting in this current case on appeal *Golden v. US* CAFC Case No. 24-2256, claim 1 of Golden's U.S. Patent "10,984,619" that was issued on April 20, 2021 for Golden's invention of "a communication device, comprising; a central processing unit (CPU); capable of CBRNE detection; and capable of stalling or stopping a vehicle". [Claim 1 of Golden's U.S. Patent "10,984,619" that was never asserted in *Golden v. US* COFC Case No. 13-307C, which means the claim cannot be dismissed for issue preclusion because the Claims Court never adjudicated the claim for validity or construed the claim].

Golden is not "precluded" from asserting in this current case on appeal *Golden v. US* CAFC Case No. 24-2256, claim 11 of Golden's U.S. Patent "10,984,619" that was issued on April 20, 2021 for Golden's invention of "a central processing unit (CPU); integrated with a communication device: capable of CBRNE detection; and capable of processing instructions for stalling or stopping a vehicle". [Claim 11 of Golden's U.S. Pat. "10,984,619" was never asserted in *Golden v. US* COFC Case No. 13-307C, which means the claim cannot be dismissed for issue preclusion because the Claims Court never adjudicated for validity or construed the claim].

Golden is not "precluded" from asserting in this current case on appeal *Golden v. US* CAFC Case No. 24-2256, claim 1 of Golden's U.S. Patent "11,645,898" that was issued on May 9, 2023 for Golden's invention of "a pre-programmed stall, stop, vehicle slow-down system; comprising a communication device: a central processing unit (CPU); and capable of processing instructions for stalling or stopping a vehicle when CBRNE is detected". [Claim 1 of Golden's U.S. Patent "11,645,898" that was not issued before the close of *Golden v. US* COFC Case No. 13-307C, which means the claim cannot be dismissed for issue preclusion].

Golden is not "precluded" from asserting in this current case on appeal *Golden v. US* CAFC Case No. 24-2256, claim 6 of Golden's U.S. Patent "10,163,287" that was issued on December 25, 2018 for Golden's invention of "[] monitoring equipment, comprising; communication device; a central processing unit (CPU); capable of CBRNE detection; and capable of stalling or stopping a vehicle".

In the following chart the text highlighted in bold blue are the preambles to Golden's four claimed inventions. Each claim combines all four inventions that was never adjudicated:

| THE GOVERNMENT'S REQUEST FOR GOLDEN'S PATENTED INVENTION(S) COMBINATIONS – PATENT CLAIMS | | | | |
|---|---|---|---|---|
| **Patent Claims -for- Patented Inventions** | **Claim 1 of U.S. Patent "10,984,619"** | **Claim 11 of U.S. Patent "10,984,619"** | **Claim 1 of U.S. Patent "11,645,898"** | **Claim 6 of U.S. Patent "10,163,287"** |
| **Communication Device**<br><br>CMDC Device(s) i.e., Smartphones, PCs, Laptops, Tablets, Monitoring Equipment and Cell-phone Detection Devices | **A communication device that is at least a personal computer (PC), a cellphone, a smartphone, a laptop, or a handheld scanner,** | whereupon, the central processing unit (CPU) of the communication device is capable of processing instructions for operational and functional execution, | processing instructions to stall, stop, or slow-down a vehicle [] receives a signal from [] (PC), … a smartphone, a laptop, a tablet, a PDA, or a handheld; | [] communication with [] one CPU configured to send signals … communication device [] capable of communicating, monitoring, detecting, and controlling. |
| **Central Processing Unit (CPU)**<br><br>CPU / Processor / Chipset / SoC | comprising at least a central processing unit (CPU), capable of: | **A central processing unit (CPU) of … a … (PC), a cellphone, a smartphone, a laptop, or a handheld scanner, …:** | Wherein, when the [] (CPU) processes instructions to stall, stop, or slow-down a vehicle, … is sent [] monitoring site | at least one central processing unit (CPU) |
| **Detection Device**<br><br>Placed In, On, Upon, Adjacent the CMDC Device(s) | processing instructions to [] detect [] chemical [], biological [], radiological [], nuclear [], or explosive [], … (WMDs); | processing instructions to [] detect [] chemical [], biological [], radiological [], nuclear [], or explosive [], … (WMDs); | processing instructions to stall, stop, or slow-down a vehicle when … chemical [], a biological [], a radiological []; a nuclear []; or explosives [] detected; | **A monitoring equipment, comprising… detecting at least … chemical, biological, radiological, or explosive agents;** |
| **Stall, Stop, Vehicle Slow-Down System**<br><br>Remote, Cellular, Satellite, Pre-Programmed | processing instructions to activate a start, stall, stop, or disabling means by engaging a vehicle's ignition system; | processing instructions to activate a start, stall, stop, or disabling means by engaging a vehicle's ignition system; | **A pre-programmed stall, stop, vehicle slow-down system, … processing instructions to … vehicle when … driverless []; self-drive []; an[d] autonomous …** | at least one of a transmitter or a transceiver … at least one CPU configured to … monitor … a vehicle, or [] send signals to control components of a vehicle… |

## THE GOVERNMENT'S "LANGUAGE OF INTENT" TO COMBINE GOLDEN'S PATENTED COMBINATIONS

In addition to a detailed description of the combined efforts of all third-party contractors, the "language of intent", wherever necessary to show the Government has "authorized and consented" to combining components of Golden's patented combination, is included in the government solicitation(s), awards, and contracts. An example of the "language of intent", to combine the combined components of Golden's patented combination is recognized in the DHS *Cell-All* initiative; the DoD DTRA *ATAK* initiative; and the DoD "JPEO-CBRND" initiative.

### DHS S&T "*Cell-All*" [Past "Language of Intent" to Combine]

Spearheaded by the Department of Homeland Security's (DHS) Science and Technology Directorate (S&T), Cell-All aims to equip your cell phone with a sensor capable of detecting deadly chemicals … "Our goal is to create a lightweight, cost-effective, power-efficient solution," says Stephen Dennis, Cell-All's program manager:

> In 2007, S&T called upon the private sector to develop concepts of operations. To this end, three teams from Qualcomm, the National Aeronautics and Space Administration (NASA), and Rhevision Technology are perfecting their specific area of expertise. Qualcomm engineers specialize in miniaturization and know how to shepherd a product to market. Scientists from the Center for Nanotechnology at NASA's Ames Research Center have experience with chemical sensing on low-powered platforms, such as the International Space Station. And technologists from Rhevision have developed an artificial nose—a piece of porous silicon that changes colors in the presence of certain molecules, which can be read spectrographically … Similarly, S&T is pursuing what's known as cooperative research and development agreements with four cell phone manufacturers: Qualcomm, LG, Apple, and Samsung. These written agreements, which bring together a private company and a government agency for a specific project, often accelerate the commercialization of technology developed for government purposes. *The Department of Homeland Security's (DHS) 2007.*

Qualcomm, the primary contractor for the *Cell-All* initiative, role has been to develop a smartphone app [CPU/Chipset] and the associated network software for processing data. Smartphone users can download the app from Google Play and, from Apple's iTunes store, so *Cell-All* will be operational on all phones using either Google's Android operating systems or Apple's iPhone operating systems.

The Senior Judge Bruggink redirected and broadened the jurisdiction of the Claims Court by narrowing the case to a dispute between two private entities under 35 U.S.C. § 271(a); Golden

and Apple, Inc. "[P]roving direct infringement under 35 U.S.C. § 271(a) is not a necessary predicate for proving direct infringement under 28 U.S.C. § 1498(a)." *Zoltek V*

When Senior Judge Bruggink redirected and broadened the jurisdiction of the Claims Court by narrowing the case to a dispute between the two private entities, *Golden v. Apple, Inc.*, Senior Judge Bruggink personally destroyed any and all possibilities of Golden proving, under § 1498(a), that Golden's entire patented combination had been made by the combined efforts of the third-party contractors, and is "suitable for use" *FastShip, LLC v. United States.*

**DoD DTRA ATAK [Current "Language of Intent" to Combine]**

Another example of the "language of intent", to combine the components of Golden's patented combination is recognized in the DoD DTRA initiative [the current case]. The Android Team Awareness Kit (ATAK) is an Android smartphone geospatial infrastructure and military situation awareness app for Google, Samsung, LG, Qualcomm, etc. ATAK has a CBRNE plugin architecture which allows developers to add functionality. This extensible plugin architecture that allows enhanced capabilities for specific mission sets. [Draper Laboratory, Inc.]

In September 2015, Defense Advanced Research Projects Agency (DARPA) reported that ATAK was used in a successful demonstration of the Persistent Close Air Support Program, and is in use by thousands of users. In 2018, the United States Air Force (USAF) Security Forces deployed ATAK at Eglin AFB, Florida. The Android Team Awareness Kit or TAK is currently used by thousands of Department of Homeland Security (DHS) personnel, along with other members of the Homeland Security Enterprise including state and local public safety personnel. TAK has supported the rescue of over 2,000 people during disaster response for seven major hurricanes (Harvey, Irma, Maria, Florence, Lane, Michael, and Dorian). The capability is also regularly used during public safety operations and national security special events like United Nations General Assembly meetings and the Super Bowl.

ATAK has various end-user versions: ATAK - Civilian (ATAK-CIV); ATAK - Government (ATAK-GOV); and, ATAK - Military (ATAK-MIL). This initiative combines Golden's patented CMDC device, CPU, and Multi-Sensor Detection device.

**DoD "JPEO-CBRND" [Future "Language of Intent" to Combine]**

Another example of the "language of intent", to combine the components of Golden's patented combination is recognized in the DoD JPEO-CBRND initiative [a future case for

filing]. The Joint Program Executive Office for Chemical, Biological, Radiological, and Nuclear Defense (JPEO-CBRND) is a component of the U.S. Department of Defense's Chemical and Biological Defense Program, the JPEO-CBRND protects the entire Joint Force – Army, Navy, Air Force, Marines, Coast Guard, and First Responders – through the advanced development of CBRN defense capabilities.

Four Joint Project Managers (JPM) provide oversight for the portfolios, including JPM CBRN Protection, JPM CBRN Medical, JPM CBRN Sensors and JPM CBRN Special Operations Forces. Two Joint Project Leads (JPL) focus on CBRN defense enabling biotechnologies and CBRN integration. The JPLs also provide portfolio-wide enabling support across the JPEO-CBRND.

Draper Laboratory has been awarded a $26 million (all options) contract by the U.S. Department of Defense (DOD) to further expand the capabilities of its unmanned autonomous systems (UAS) software to perform chemical, biological, radiological and nuclear (CBRN) reconnaissance missions in collaborative teams and in degraded operating environments.

Draper's UAS on a CBRN reconnaissance mission includes a TAK-enabled consumer device. Draper will advance its system under an effort at JPEO-CBRND called CSIRP, which stands for CBRN Sensor Integration on Robotic Platforms. Additional enhancements to the system will include advances in CBRN sensors.

The autonomous software on the aerial unmanned platform will be designed to operate with the command-and-control user interface for the U.S. Army's Nuclear, Biological and Chemical Reconnaissance Vehicle (NBCRV) Stryker platform currently being developed by Teledyne FLIR. Both the autonomous SkyRaider and the new sensor payloads will be designed to operate with the command-and-control user interface for the US Army's Nuclear, Biological and Chemical Reconnaissance Vehicle (NBCRV) Stryker platform.

Draper will integrate communications with the Tactical Assault Kit (TAK) platform, enabling the unmanned systems to send images to a mobile device (i.e., smartphone, laptop, tablet) and overlay the locations of detected objects of interest on an aerial map for human team members, all in real-time.

A major focus for Draper is to extend its air-ground teaming architecture to link multiple systems into a mesh network. With mesh, every autonomous vehicle; the aerial (UAV), ground (UGV), and maritime (USV), becomes an access point and relays messages among themselves.

The UASs will use Draper's novel algorithm to synthesize the data from onboard sensors including GPS, LiDAR, accelerometer, magnetometer and onboard cameras, and be able to communicate with human operators, centralized command centers, and other teamed UASs.

In addition to the DoD and Draper manufacturing or using Golden's patented invention combinations in the current case *Golden v. DTRA* (the "Government"), that includes as one of the combined component a TAK-enabled device or mobile device (i.e., smartphone, tablet, etc.); DoD and Draper have extended their reach into Golden's patented combined combinations of at least Golden's patented TAK-enabled CMDC device(s) for purposes of section 1498(a).

The DoD and Draper has combined Golden's patented stall, stop, and vehicle slow-down system for controlling the operational systems of an unmanned aerial vehicle (UAV) in the DoD JPEO-CBRND initiative.

Golden provides additional patent claims not already asserted in this current case, but are relevant to the future case, whereby DoD JPEO-CBRND is defendant. This initiative combines Golden's patented CMDC device, CPU, Multi-Sensor Detection device; and stall, stop, slow-down system for autonomous vehicles.

## SUMMARY AFFIRMANCE

The United States Court of Federal Claims (C.F.C. or COFC) is a United States federal court that hears monetary claims against the U.S. government. Because the COFC court only hears cases against the Government, the United States is always the defendant in cases before the United States Court of Federal Claims (CFC).

Therefore, the question here is "did the United States *authorize* the infringement of, or *consented* to the manufacture of Golden's patented CMDC device, CPU, Multi-Sensor Detection device; and stall, stop, slow-down system for autonomous vehicles"?

The next question is "under the United States expressed or implied authorization for contractors and subcontractors alike, for the DHS *Cell-All* initiative; the DoD DTRA *ATAK* initiative; and the DoD "JPEO-CBRND" initiative; were there products manufactured for or by the United States in accordance to the requested specifications, so that the requirements were satisfied under 28 USC § 1498(a) for the infringement of Golden's patented inventions combinations and manufactured to the point of being "suitable for use"?

The last question is "why was Golden ordered to prove direct infringement under 35 U.S.C. § 271(a) against the private entity Apple in *Golden v. US (DHS)* COFC Case No. 13-307C, and prove direct infringement under 35 U.S.C. § 271(a) against the private entity Google in *Golden v. US (DTRA)* COFC Case No. 23-811C, as a necessary predicate to proving direct infringement under 28 USC § 1498(a)"?

Apple was never awarded a sole source contract under the DHS *Cell-All* initiative, and Google was not awarded a sole source contract under the DoD DTRA ATAK initiative. According to FAR 6.303-1 Requirements: "A contracting officer shall not commence negotiations for a sole source contract, commence negotiations for a contract resulting from an unsolicited proposal, or award any other contract without providing for full and open competition unless the contracting officer certifies the accuracy and completeness of the justification."

In fact, Apple did not participate in, and was not recognized as being a contributor in the development of the first new, improved upon, and useful cell phone at the 2010 DHS S&T Directorate *Cell-All* Demonstration *(Exhibit B)*.

Another fact; the Government claims it is the inventor of the smart phone, not Apple. *(Exhibit C)*. Apple is credited by the Government as being a good assembler of the components that forms the smartphone, but Apple, nor Steve Jobs is the inventor of the smartphone.

Apple credits itself as being a thief. Steve Jobs who famously said in 1996: "Picasso had a saying – 'good artists' copy; great artists steal' -- and we have always been shameless about stealing great ideas." https://www.cnet.com/tech/tech-industry/what-steve-jobs-really-meant-when-he-said-good-artists-copy-great-artists-steal/

As indicated throughout this reply document and Golden's motion for summary affirmance, Golden's case cannot be dismissed for preclusion on issues that are "moot". A party may raise a mootness challenge at any time during the litigation, including for the first time on appeal. *DBSI/TRI IV Ltd. P'ship v. United States*, 465 F.3d 1031, 1038 (9th Cir. 2006) (explaining that mootness is a "jurisdictional issue that may be raised at any time, even for the first time on appeal").

This Motion for Summary Affirmance that is filed prior to completion of briefing include a showing that the Claims Court dismissal under the *Res Judicata* and the *Kessler* doctrines, are in fact so manifestly unsubstantial that disposition by motion is appropriate.

The instant motion for summary affirmance satisfies the high standard governing [the] award of such relief. "A party seeking summary disposition bears the heavy burden of establishing that the merits of his case are so clear that expedited action is justified." *Taxpayers Watchdog, Inc. v. Stanley*, 819 F.2d 294, 297-98 (D.C. Cir. 1987).

The true issue of Golden's cases has never been adjudicated or resolved, and is still ongoing: "In *James v. Campbell*, 104 U.S. 356, 357-58 (1882), the Supreme Court explained that when the government grants a patent, it "confers upon the patentee an exclusive property in the patented invention which cannot be appropriated or used by the government itself, without just compensation."

*(Exhibit D)* is just a small example of how the Government (DHS) continues to appropriated or used Golden's patents without just compensation.

Sincerely,

Larry Golden, *Pro Se* Plaintiff
740 Woodruff Rd., #1102
Greenville, SC 29607
(H) 8642885605
(M) 8649927104
Email: atpg-tech@charter.net

16

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 12th day of September, 2024, a true and correct copy of the foregoing "Plaintiff-Appellant's Reply in Support of Plaintiff-Appellant's Motion for Summary Affirmance", was served upon the following Defendant by priority "express" mail:

Grant D. Johnson

Trial Attorney

Commercial Litigation Branch

Civil Division

Department of Justice

Washington, DC 20530

Grant.D.Johnson@usdoj.gov

(202) 305-2513

Larry Golden, Pro Se

740 Woodruff Rd., #1102

Greenville, South Carolina 29607

atpg-tech@charter.net

864-288-5605

# Exhibit A

**RECEIVED**

SEP 1 3 2024

United States Court of Appeals
For the Federal Circuit

Filed 7/14/22

<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| PARKFORD OWNERS FOR A BETTER COMMUNITY, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> JENINE WINDESHAUSEN, as County Treasurer-Tax Collector, etc., et al., <br><br> Defendants and Respondents; <br><br> SILVERSWORD PROPERTIES, LLC, et al., <br><br> Real Parties in Interest and Respondents. | C094419 <br><br> (Super. Ct. No. SCV0041548) |

APPEAL from a judgment of the Superior Court of Placer County, Charles D. Wachob, Judge. Reversed with directions.

Law Office of Donald B. Mooney and Donald B. Mooney for Plaintiff and Appellant Parkford Owners for a Better Community.

Clayton T. Cook, County Counsel for Defendants and Respondents Jenine Windeshausen, as County Treasurer-Tax Collector and County of Placer.

1

Remy Moose Manley, James G. Moose, Laura M. Harris and Nathan O. George for Real Parties in Interest and Respondents Silversword Properties, K.H. Moss Company, and Moss Equity.

This is the second appeal arising out of a dispute over the operation of a commercial self-storage facility (Treelake Storage) within a planned unit development in Granite Bay (Treelake Village).  Real party in interest, Silversword Properties, LLC (Silversword) owns the property upon which real parties in interest K.H. Moss Company and Moss Equity (collectively, Moss) operate Treelake Storage.

In a separate but related lawsuit filed in 2017, Parkford Owners for a Better Community (Parkford) challenged Placer County's (County) issuance of a building permit for the construction of an expansion of Treelake Storage, asserting that the County failed to comply with both the California Environmental Quality Act (CEQA) (Pub. Resources Code, § 21000 et seq.) and the Planning and Zoning Law (Gov. Code, § 65000 et seq.).  The trial court concluded:  (1) the County's issuance of the building permit was ministerial rather than discretionary, and therefore CEQA did not apply; and (2) Parkford's challenge under the Planning and Zoning Law was barred by the statute of limitations.  Parkford appealed, challenging each of these conclusions.

In August 2020, a different panel of this court dismissed the appeal in a published opinion, concluding that completion of the challenged expansion of Treelake Storage prior to entry of judgment rendered moot Parkford's challenge to the County's issuance of a building permit authorizing construction of the expansion.  (*Parkford Owners for a Better Community v. County of Placer* (2020) 54 Cal.App.5th 714 (*Parkford I*).)

Nearly a year later, in June 2021, the trial court concluded that the present lawsuit, which was filed by Parkford in 2018 and challenged the County's issuance of a business license for the operation of Treelake Storage, was barred by both aspects of the doctrine of res judicata--claim and issue preclusion.  This appeal followed.

2

We conclude that *Parkford I* does not constitute a final judgment "on the merits" as defined by the applicable authority explaining what constitutes a final judgment on the merits for purposes of determining whether a new claim is barred by the law of preclusion; therefore, the doctrine of res judicata (including both claim and issue preclusion) does not operate to bar the present lawsuit. Accordingly, we will reverse the judgment and remand for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

The underlying facts are set forth in greater detail in our prior published opinion, *Parkford I*, *supra*, 54 Cal.App.5th 714. We summarize those facts herein as relevant to provide context for the current appeal.

Treelake Storage, which is located within the Treelake Village planned unit development in Granite Bay, has been in operation for more than 20 years. (*Parkford I*, *supra*, 54 Cal.App.5th at p. 717.) As originally approved more than 30 years ago, Treelake Village would consist of over 1,000 residential units and various amenities, including a number of lakes and waterways, and storage for boats and recreational vehicles owned by residents of the community. (*Ibid.*) The latter amenity, to be located on a power line easement that crossed the property, would eventually become Treelake Storage. (*Ibid.*)

*Environmental Review*

In June 1987, after preparation of a final environmental impact report (EIR), a notice of determination was filed indicating the County determined that the Treelake Village development project would not have a significant effect on the environment, an EIR was prepared, and mitigation measures were made a condition of the project's approval. (*Parkford I*, *supra*, 54 Cal.App.5th at p. 717.)

Over a decade later, in June 1998, an addendum to the final EIR was completed. (*Parkford I*, *supra*, 54 Cal.App.5th at p. 717.) The addendum was prepared due to modifications to the Treelake Village Master Plan, which included increasing the

3

minimum lot size and subdividing certain parcels into smaller lots. (*Ibid.*) That September, a notice of determination was filed indicating the County determined that the modifications would not have a significant effect on the environment, an addendum to the previous EIR was prepared, and mitigation measures were made a condition of the project's approval. (*Ibid.*)

The final subdivision map for Treelake Village was recorded in April 1999. (*Parkford I, supra*, 54 Cal.App.5th at p. 717.)

*Initial Construction of Treelake Storage*

The authorization of a commercial self-storage facility within the Treelake Village development occurred through modification of the conditional use permit (CUP-1006) for the Treelake Village project. (*Parkford I, supra*, 54 Cal.App.5th at pp. 717-718.) In relevant part, condition 7 of CUP-1006 originally stated: "The following uses are among those permitted within and adjacent to the high-voltage power line easements crossing the project property. Developer shall select from his list such facilities as in his judgment best serve the project and shall provide a schedule for the review and approval by [the County's development review committee] . . . [¶] . . . [¶] (G) Recreational vehicle and boat storage for project residents only." (*Id.* at p. 718.)

In November 1993, the County Planning Department approved ministorage as an appropriate use within the power line easement. (*Parkford I, supra*, 54 Cal.App.5th at p. 718.) In the meantime, an amendment of CUP-1006 resulted in a renumbering of the conditions that caused condition 7 to become condition 8. (*Ibid.*)

In May 1996, the County Planning Commission approved a requested modification of condition 8(G) to remove the residents-only restriction on use of the planned storage facilities. (*Parkford I, supra*, 54 Cal.App.5th at p. 718.)

In August 1997, a building permit was issued for construction of Treelake Storage. (*Parkford I, supra*, 54 Cal.App.5th at p. 718.) A building permit for "Phase II" of the

construction was issued in September 1998. (*Ibid.*) After construction was completed, a certificate of occupancy was issued in November 1999. (*Ibid.*)

*Subsequent Expansion of Treelake Storage*

In April 2001, and again in August 2004, two additional phases of construction to expand Treelake Storage's facilities were approved, and building permits were issued for each phase of expansion. (*Parkford I, supra*, 54 Cal.App.5th at p. 718.) Certificates of occupancy were issued in 2002 and 2005, respectively, after construction of each expansion phase was completed. (*Ibid.*)

Finally, in August 2016, plans for the most recent expansion of Treelake Storage were approved. (*Parkford I, supra*, 54 Cal.App.5th at p. 718.) The building permit for this expansion was issued in October 2016; it authorized construction of a 28,240-square-foot building and associated utilities. (*Id.* at pp. 718-719.) After construction was completed, a certificate of occupancy was issued in October 2017. (*Ibid.*)

*Parkford I*

In February 2017, Parkford filed a separate but related lawsuit, i.e., *Parkford I.* (*Parkford I, supra*, 54 Cal.App.5th at p. 719.) The operative pleading challenged the County's issuance of the October 2016 building permit under CEQA and the Planning and Zoning Law and sought a writ of mandate directing the County to set aside its approval of the building permit and all related approvals, prepare and certify an adequate EIR for the expansion project, and suspend all construction activity until the County complied with CEQA and all other applicable laws. (*Id.* at pp. 718-719.)

In April 2018, the trial court concluded that the County did not violate CEQA because the issuance of the challenged building permit was a ministerial action. (*Parkford I, supra*, 54 Cal.App.5th at p. 720.) Thereafter, the trial court concluded that Parkford's Planning and Zoning Law claim was barred by the 90-day statute of limitations set forth in Government Code section 65009. (*Parkford I*, at p. 721.) Parkford appealed, challenging each of these conclusions. (*Ibid.*)

5

*The Present Lawsuit and Prior Appellate Opinion*

Parkford filed the present lawsuit in July 2018, less than three weeks after judgment was entered against it in *Parkford I*. The operative pleading challenged the County's issuance of a business license to Treelake Storage on the ground that a ministorage facility was not an allowable use for property zoned "Residential-Ag" under the county code. Parkford asserted that Treelake Storage was operating without a valid business license because a ministorage facility was not an allowable use in residentially zoned districts, even by special permit such as a conditional use permit. Parkford sought a writ of mandate directing the County to vacate and set aside the current business license, an order declaring that the issuance of any renewals of the business license would be in violation of the county code, and a permanent injunction prohibiting the County from issuing any further renewals of the business license.

In January 2019, the trial court stayed the present lawsuit pending the outcome of the appeal in *Parkford I*. In August 2020, a panel of this court dismissed the appeal in *Parkford I*, finding that completion of the challenged expansion of Treelake Storage prior to entry of judgment rendered moot Parkford's challenge to the County's issuance of the building permit authorizing construction of the expansion. (*Parkford I, supra*, 54 Cal.App.5th at p. 725.)

After the remittitur was issued, the trial court lifted the stay of the present lawsuit in February 2021. In April 2021, Silversword and Moss (collectively, real parties in interest or real parties) filed a motion for judgment on the pleadings, which was joined by defendants the County and Jenine Windeshausen, in her official capacity as the Placer County Treasurer-Tax Collector (collectively, defendants). Real parties asserted that the present lawsuit was barred by both aspects of the doctrine of res judicata--claim and issue preclusion. As for the requirement of a final judgment on the merits, the moving papers provided no analysis of the relevant case law and simply stated in a conclusory manner that the judgment in the prior case qualified as a final judgment on the merits.

6

In response, Parkford argued (among other things) that neither claim nor issue preclusion applied because there was no final judgment on the merits, relying in part on cases we later discuss. In reply, real parties argued that there *was* a final judgment on the merits because our prior opinion in *Parkford I* left the judgment intact when dismissing the appeal as moot, also citing cases that we later discuss in purported support of their argument.

The trial court issued a tentative decision granting the motion, which became the final order of the court. The tentative decision did not discuss the relevant case law or explain why there was a final judgment on the merits for purposes of the law of preclusion. The trial court's analysis in support of its decision was as follows: "A review of the first amended petition, in conjunction with judicially noticeable documents, shows the claims are barred by the doctrines of res judicata and collateral estoppel. [¶] Specifically, Exhibit A shows plaintiff previously filed a writ petition against the respondents and real parties, or are in privity with the respondents, involving the same CUP permit and storage facility with the respondents and real parties prevailing in the action. The causes of action within the two actions stem from the same primary right. In light of this, current action is barred."

This appeal followed.[1] Briefing was completed on February 22, 2022, and the case was assigned to a panel of this court shortly thereafter. The panel as presently constituted was assigned in May 2022. The parties requested oral argument, which was heard on June 24, 2022.

## DISCUSSION

Parkford contends reversal is required because the trial court erred in determining the present lawsuit is barred by the principles of claim and issue preclusion. We agree.

---

[1] Defendants filed a joinder to real parties' appellate briefing.

Although we do not dispute that our dismissal of the appeal in *Parkford I* left the judgment of the trial court intact, we do not agree with real parties that the dismissal solely on mootness grounds resulted in a final judgment "on the merits" as required to apply the doctrine of res judicata. Due to the dismissal of the appeal, the merits of the trial court's challenged rulings in *Parkford I* evaded appellate review. Thus, as we next explain, the earlier litigation did not result in a final judgment on the merits such that application of the doctrine of res judicata is proper.

I

*The Law of Preclusion and Standard of Review*

A. *Claim and Issue Preclusion*

"The law of preclusion helps to ensure that a dispute resolved in one case is not relitigated in a later case. Although the doctrine has ancient roots [citation], its contours and associated terminology have evolved over time." (*Samara v. Matar* (2018) 5 Cal.5th 322, 326 (*Samara*).) Courts have at times used "res judicata"--"Latin for 'a thing adjudicated' "--as an umbrella term, encompassing both the primary aspect of claim preclusion and the secondary aspect of issue preclusion. (*DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 823-824 (*DKN Holdings*); *Guerrero v. Department of Corrections & Rehabilitation* (2018) 28 Cal.App.5th 1091, 1098.)

"*Claim preclusion* 'prevents relitigation of the same cause of action in a second suit between the same parties or parties in privity with them.' [Citation.] Claim preclusion arises if a second suit involves (1) the same cause of action (2) between the same parties (3) after a final judgment on the merits in the first suit." (*DKN Holdings, supra*, 61 Cal.4th at p. 824.) If claim preclusion is established, it operates to bar causes of action that were, or could have been, litigated in the first suit. (*Busick v. Workmen's Comp. Appeals Bd.* (1972) 7 Cal.3d 967, 975; *DKN Holdings*, at p. 824.) Claim preclusion promotes judicial economy and avoids piecemeal litigation by preventing a plaintiff from " ' "splitting a single cause of action or relitigat[ing] the same cause of

8

action on a different legal theory or for different relief." ' " (*Mycogen Corp. v. Monsanto Co.* (2002) 28 Cal.4th 888, 897.)

"*Issue preclusion* prohibits the relitigation of issues argued and decided in a previous case, even if the second suit raises different causes of action. [Citation.] Under issue preclusion, the prior judgment conclusively resolves an issue actually litigated and determined in the first action. [Citation.] There is a limit to the reach of issue preclusion, however. In accordance with due process, it can be asserted only against a party to the first lawsuit, or one in privity with a party." (*DKN Holdings, supra*, 61 Cal.4th at p. 824.) Issue preclusion applies only: " '(1) after final adjudication (2) of an identical issue (3) actually litigated and necessarily decided in the first suit and (4) asserted against one who was a party in the first suit or one in privity with that party.' " (*Samara, supra*, 5 Cal.5th at p. 327; *DKN Holdings*, at p. 825.) "Courts have understood the ' "necessarily decided" ' prong to 'require[] only that the issue not have been "entirely unnecessary" to the judgment in the initial proceeding' [citation]—leaving room for a decision based on two grounds to be preclusive as to both." (*Samara*, at p. 327.)

Whether claim or issue preclusion applies in a particular case is a question of law. (*Ayala v. Dawson* (2017) 13 Cal.App.5th 1319, 1325.)

B. *Standard of Review*

"In an appeal from a motion granting judgment on the pleadings, we accept as true the facts alleged in the complaint and review the legal issues de novo. 'A motion for judgment on the pleadings, like a general demurrer, tests the allegations of the [operative pleading], supplemented by any matter of which the trial court takes judicial notice, to determine whether [the party] has stated a cause of action. [Citation.] Because the trial court's determination is made as a matter of law, we review the ruling de novo, assuming the truth of all material facts properly pled.' " (*Angelucci v. Century Supper Club* (2007) 41 Cal.4th 160, 166.)

II

*Analysis*

A. *Forfeiture*

We first reject real parties' initial contention that Parkford has forfeited its appellate arguments by failing to request a statement of decision or challenge the trial court's tentative ruling. A party's "[s]ubmission on a tentative ruling is neutral; it conveys neither agreement nor disagreement with the analysis." (*Mundy v. Lenc* (2012) 203 Cal.App.4th 1401, 1406.) On appeal, Parkford asserts error as to legal issues that were briefed by the parties and specifically addressed in the tentative ruling. We find no merit in real parties' suggestion that a party must object to a tentative ruling and reiterate every rejected argument in order to preserve those arguments on appeal. (See *Schulz v. Jeppesen Sanderson, Inc.* (2018) 27 Cal.App.5th 1167, 1179-1180 [finding no such requirement with regard to a statement of decision].) Further, we find real parties' reliance on *Old East Davis Neighborhood Assn. v. City of Davis* (2021) 73 Cal.App.5th 895 and *Porterville Citizens for Responsible Hillside Development v. City of Porterville* (2007) 157 Cal.App.4th 885, misplaced. Both of those cases are clearly distinguishable. (See *Old East Davis*, at pp. 911-912 [failure to request a ruling on contentions the trial court *expressly declined to reach* in tentative ruling results in forfeiture of contentions on appeal]; *Porterville*, at pp. 911-912 [failure to object to tentative ruling or otherwise alert trial court of its *failure to expressly rule on an issue* results in forfeiture of issue on appeal].)

B. *Final Judgment for Purposes of Application of the Doctrine of Res Judicata*

We next conclude that the dismissal of the appeal in *Parkford I* on the ground of mootness did not constitute a final judgment "on the merits" for the purpose of applying the doctrine of res judicata. Thus, the trial court erred in determining that the present lawsuit is barred by the principles of claim and issue preclusion and reversal is required.

10

As noted *ante*, claim preclusion requires a final judgment on the merits, while issue preclusion requires a final adjudication of an issue. (*Samara, supra*, 5 Cal.5th at p. 327; *DKN Holdings, supra*, 61 Cal.4th at pp. 824-825.) A judgment or adjudication is on the merits if the substance of the claim or issue is tried and determined. (See *Johnson v. City of Loma Linda* (2000) 24 Cal.4th 61, 77; *Citizens for Open Government v. City of Lodi* (2012) 205 Cal.App.4th 296, 325; *Federation of Hillside & Canyon Assns. v. City of Los Angeles* (2004) 126 Cal.App.4th 1180, 1203.) A trial court judgment determined to be moot on appeal and dismissed has not been fully litigated, as appellate review of the merits was never completed. (*Coalition for a Sustainable Future in Yucaipa v. City of Yucaipa* (2011) 198 Cal.App.4th 939, 943.)

As set forth *ante*, in *Parkford I* the trial court concluded that the County did not violate CEQA because the issuance of the challenged building permit was a ministerial action. (*Parkford I, supra*, 54 Cal.App.5th at p. 720.) The trial court further concluded that Parkford's Planning and Zoning Law claim was barred by the 90-day statute of limitations set forth in Government Code section 65009. (*Parkford I*, at p. 721.) In reaching these conclusions, the trial court did not determine whether Parkford's claims were moot due to the completion of the most recent expansion of Treelake Storage, as argued by real parties and defendants. (*Id.* at pp. 720-721.) However, an appeal challenging the trial court's conclusions was filed by Parkford and ultimately decided by this court solely on the ground of mootness (see *id.* at pp. 722-725), a purely procedural or technical ground that is distinct from an actual determination of the merits. (See *Assn. of Irritated Residents v. Dept. of Conservation* (2017) 11 Cal.App.5th 1202, 1220, 1224 [action dismissed due to mootness is not on the merits].) Accordingly, because the appeal in *Parkford I* was not disposed of "on the merits," neither claim nor issue preclusion apply. (See *id.* at p. 1226 [claim preclusion does not apply when prior judgment is based on the ground of mootness].)

11

We find unpersuasive real parties' contention that the judgment in *Parkford I* "remains 'on the merits' despite dismissal of the appeal as moot." In support of their position, real parties cite cases standing for the proposition that the involuntary dismissal of an appeal normally leaves the judgment intact (see e.g., *In re Jasmon O.* (1994) 8 Cal.4th 398, 413), and that if an appellate court wishes to avoid this result, "it can do so by reversing the judgment solely for the purpose of restoring the matter to the jurisdiction of the superior court with directions for that court to dismiss the action," as "[t]his approach disposes of the case, not merely the proceeding that brought it to the appellate court." (*County of Fresno v. Shelton* (1998) 66 Cal.App.4th 996, 1005, citing *Paul v. Milk Depots, Inc.* (1964) 62 Cal.2d 129, 134 (*Paul*) [describing limited reversal procedure].) We do not disagree with this basic proposition; here the original judgment remains intact despite the dismissal of the appeal in *Parkford I*. However, that is not the dispositive question in this case. As we have explained, the question we must answer in this appeal is whether the judgment is final "on the merits" for purposes of res judicata, where the merits of the trial court's rulings evaded appellate review despite their being argued on appeal. Simply put, an appeal was taken that challenged trial court rulings, but the validity of those rulings was never adjudicated on appeal.

At oral argument, counsel for real parties argued that he specifically asked the *Parkford I* panel to affirm the judgment and dismiss only the appeal in that case. We do not dispute that this approach was requested by counsel both in the briefing and at oral argument in *Parkford I*. However, the *Parkford I* panel did *not* explicitly affirm the judgment on its merits when it dismissed the appeal as moot. This disposition resulted in the trial court's judgment remaining intact; however, as we have explained, that is not the dispositive issue here. We reject the real parties' suggestion that the judgment in *Parkford I* has preclusive effect because this court, in disposing of the appeal in that case, did not follow the procedure described by our Supreme Court in *Paul*, *supra*, 62 Cal.2d at page 134. First, *Paul* was not a preclusion case. Second, in *Paul*, the regulation that was

12

found unconstitutional by the trial court had been superseded by a new regulation.  (*Paul*, *supra*, 62 Cal.2d at pp. 131-132, 134.)  Under those circumstances, "since the basis for that judgment has now disappeared," our Supreme Court found it proper to reverse the judgment and remand with directions to dismiss the proceeding in order to avoid " 'impliedly' affirming" a judgment holding a regulation unconstitutional.  (*Id.* at p. 134.)  *Paul* did not hold that absent a similar disposition, a dismissal for mootness results in appellate affirmance of the underlying judgment "on the merits" for purposes of res judicata.  In short, *Paul* does not establish that judgment in *Parkford I* has preclusive effect in subsequent litigation.

Our conclusion is consistent with our Supreme Court's recent decision in *Samara*.  There, our high court held that, for purposes of the law of preclusion, "a ground reached by the trial court and properly challenged on appeal, but not embraced by the appellate court's decision, should not affect the judgment's preclusive effect."  (*Samara, supra*, 5 Cal.5th at p. 334.)  Instead, the preclusive effect of the judgment should be evaluated as though the trial court had not reached the issue that the appellate court did not reach.  (*Id.* at pp. 326, 334, 338 [refusing to give preclusive effect to a merits-based trial court determination that evaded appellate review, explaining that this "approach aligns far better with the recognition that although trial court decisions are often thorough, thoughtful, and correct, litigants should be afforded more procedural fairness before being bound by all aspects of a trial court's challenged determination"].)[2]

---

[2] We note that the *Samara* court identified a limitation on its holding:  "We caution . . . that we take no position on the significance of an independently sufficient alternative ground reached by the trial court and *not* challenged on appeal."  (*Samara, supra*, 5 Cal.5th at p. 337.)  Our Supreme Court made this cautionary comment after explaining that "[c]ourts have understood the ' "necessarily decided" ' prong to 'require[] only that the issue not have been "entirely unnecessary" to the judgment in the initial proceeding' [citation]—leaving room for a decision based on two grounds to be preclusive as to both."  (*Id.* at p. 327)

In *Samara*, our Supreme Court overruled *People v. Skidmore* (1865) 27 Cal. 287, which gave preclusive effect to a trial court determination that evaded appellate review, and disapproved its progeny, such as *Bank of America v. McLaughlin Land & Livestock Co.* (1940) 40 Cal.App.2d 620. (*Samara, supra,* 5 Cal.5th at pp. 329-330, 337-338.) In doing so, the *Samara* court rejected the so-called traditional rule announced in *Skidmore* and followed the modern rule expressed in the Second Restatement. (*Samara,* at pp. 331-338.) This was in accord with more recent appellate court authority. (See *Newport Beach Country Club, Inc. v. Founding Members of Newport Beach Country Club* (2006) 140 Cal.App.4th 1120, 1123, 1126-1132 [rejecting *Skidmore* and following the modern or Second Restatement rule, which provides that " ' "[i]f the appellant [*sic*] court upholds one of [two] determinations as sufficient and refuses to consider whether or not the other is sufficient and accordingly affirms the judgment, the judgment is [only] conclusive as to the first determination" ' "]; see also *Zevnik v. Superior Court* (2008) 159 Cal.App.4th 76, 83-85; *Butcher v. Truck Ins. Exchange* (2000) 77 Cal.App.4th 1442, 1446-1447, 1460.) In concluding that neither claim nor issue preclusion applied, the *Samara* court assumed, without deciding its correctness, that a decision on timeliness grounds (i.e., statute of limitations) is not a decision on the merits for purposes of the law of preclusion. (*Samara,* at p. 338 [noting that the issue was undisputed].) Thus, where, as here, an appellate court disposes of an appeal solely on a procedural or technical ground that does not reach the merits of the underlying controversy, such as mootness, the judgment does not have preclusive effect in subsequent litigation. (See *ibid.* [holding that neither claim nor issue preclusion apply where the trial court rules on both the merits and a procedural ground in the first suit, but the appellate court affirms based solely on the procedural ground, because it is not "a 'final judgment on the merits,' " as the merits were not " 'necessarily decided in the first suit,' or even 'decided' at all"].)

Other authority decided prior to *Samara* agrees that a judgment becoming final after an appeal is dismissed as moot does not have preclusive effect in a subsequent

action because the judgment does not constitute a final judgment "on the merits" of the controversy. (*Chamberlin v. City of Palo Alto* (1986) 186 Cal.App.3d 181, 187; see also *Minor v. Lapp* (1963) 220 Cal.App.2d 582, 584; Rest.2d Judgments (1982) § 28.) This authority is consistent with *Samara*, and we agree with it. Real parties' attempts to distinguish these cases are not persuasive.

   We acknowledge that one appellate court appears to have disagreed as to whether such a judgment may be considered a final judgment "on the merits" for purposes of the law of preclusion. (*Lyons v. Security Pacific Nat. Bank* (1995) 40 Cal.App.4th 1001, 1016-1018 [concluding that the dismissal of an appeal on the ground of mootness that was not made without prejudice results in a final judgment for purposes of claim preclusion].) Real parties relied on *Lyons* in the trial court and also in their briefing on this appeal. Our reading of *Lyons* indicates that although the *Lyons* court purported to find the judgment final for purposes of res judicata, its analysis (including its attempts to distinguish *Chamberlin v. City of Palo Alto, supra,* 186 Cal.App.3d at page 187 and *Minor v. Lapp, supra,* 220 Cal.App.2d at page 584) centers on the issue of finality of a trial court judgment in general. The relevant portion of the opinion does not distinguish or even reference the "on the merits" requirement of res judicata, and expresses disagreement with a hypothetical argument that dismissal of an appeal based on mootness precludes a judgment from ever becoming final. (*Lyons,* at p. 1018.) As we have explained *ante,* the lack of finality on the merits for purposes of application of the doctrine of res judicata is not the same thing as the lack of a final judgment in any given case or controversy. In any event, *Lyons* predates *Samara* and, to the extent *Lyons* supports the real parties' contention that *Parkford I* constitutes a final judgment "on the merits," we decline to follow it for the reasons previously stated.

In sum, we conclude that the present lawsuit is not barred by the law of preclusion. Neither claim nor issue preclusion apply because *Parkford I* does not constitute a final judgment "on the merits." Indeed, no merits-based determination was made in *Parkford I*, as the appeal in that case was dismissed on the ground of mootness.[3]

## DISPOSITION

The judgment is reversed. The trial court shall vacate the order denying Parkford's first amended petition for writ of mandate and enter an order denying the motion for judgment on the pleadings filed by real parties in interest and joined by defendants. Parkford shall recover its costs on appeal. (Cal. Rules of Court, rule 8.278(a).)


_____/s/_____
Duarte, J.


We concur:


_____/s/_____
Robie, Acting P. J.


_____/s/_____
Earl, J.


_____

[3] In light of our conclusions, we need not and do not consider the parties' remaining arguments.

**RECEIVED**

SEP 13 2024

United States Court of Appeals
For the Federal Circuit

# Exhibit D



U.S. Department of Homeland Security
Washington, DC 20528

**Homeland Security**

Science and Technology

February 17, 2016

Larry Golden
740 Woodruff Road 1102
Greenville, South Carolina 29607

**Re: FOIA Request 2016-STFO-00021**

Dear Mr. Golden:

This is the acknowledgement and final response to your Freedom of Information Act (FOIA) request to the Department of Homeland Security (DHS), Science and Technology Directorate (S&T) dated October 26, 2015, and received by this office on February 2, 2016. You submitted 4 FOIA requests seeking numerous synopsis descriptions, published date, company awarded, type of award, total amount awarded, description of products or services, and specifications of products for solicitation number BAA 07-10. We have aggregated all 4 of your requests for processing.

We conducted a comprehensive search for records within S&T's Office of Procurement Operations that would be responsive to your request. A search of the procurement database for the key terms solicitation number BAA 07-10 was completed. Unfortunately, we were unable to locate or identify any responsive records.

While an adequate search was conducted, you have the right to appeal this determination that no records exist within S&T that would be responsive to your request. Should you wish to do so, you must send your appeal and a copy of this letter, within 60 days of the date of this letter, to: Associate General Counsel (General Law), Mailstop 0655, U.S. Department of Homeland Security, Washington, DC 20528, following the procedures outlined in the DHS FOIA regulations at 6 C.F.R. § 5.9. Your envelope and letter should be marked "FOIA Appeal." Copies of the FOIA and DHS regulations are available at www.dhs.gov/foia.

The Office of Government Information Services (OGIS) also mediates disputes between FOIA requesters and Federal agencies as a non-exclusive alternative to litigation. If you are requesting access to your own records (which is considered a Privacy Act request), you should know that OGIS does not have the authority to handle requests made under the Privacy Act of 1974. If you wish to contact OGIS, you may email them at ogis@nara.gov or call 1-877-684-6448.

Provisions of the FOIA allow us to recover part of the cost of complying with your request. In this instance, because the cost is below the $14 minimum, there is no charge.

If you need to contact our office concerning this request, please contact stfoia@hq.dhs.gov or (202) 254-6342 and refer to **2016-STFO-00021**.

Sincerely,

Katrina Hagan
FOIA Officer



U.S. Department of Homeland Security
Washington, DC 20528

**Homeland Security**

Science and Technology

February 1, 2016

Larry Golden
740 Woodruff Road #1102
Greenville, South Carolina 29607

Re: **2016-STFO-00023**

Dear Mr. Golden:

This acknowledges receipt of your October 26, 2015, Freedom of Information Act (FOIA) request to the Department of Homeland Security (DHS), Science and Technology Directorate (S&T) for the synopsis, award amount, posted date, company awarded, type of award, total amount awarded, description of products or services, and specification of products related to Long Range Broad Agency Announcement (LRBAA) 08-01. You are requesting a fee waiver and expedited processing. Your request was received in this office on January 27, 2016.

Due to the increasing number of FOIA requests received by this office, we may encounter some delay in processing your request. Per Section 5.5(a) of the DHS FOIA regulations, 6 C.F.R. Part 5, the Department processes FOIA requests according to their order of receipt. Although DHS' goal is to respond within 20 business days of receipt of your request, the FOIA does permit a 10-day extension of this time period. As your request seeks numerous documents that will necessitate a thorough and wide-ranging search, DHS will invoke a 10-day extension for your request, as allowed by Title 5 U.S.C. § 552(a)(6)(B). If you care to narrow the scope of your request, please contact our office. We will make every effort to comply with your request in a timely manner.

As it relates to your fee waiver request, I have reviewed your letter thoroughly and have determined that you have not presented a convincing argument that you are entitled to a blanket waiver of fees.

The DHS FOIA Regulations, 6 CFR § 5.11(k)(2), set forth six factors to examine in determining whether the applicable legal standard for a fee waiver has been met. We will consider these factors in our evaluation of your request for a fee waiver:

> (1) Whether the subject of the requested records concerns "the operations or activities of the government;"

(2) Whether the disclosure is "likely to contribute" to an understanding of government operations or activities;

(3) Whether disclosure of the requested information will contribute to the understanding of the public at large, as opposed to the individual understanding of the requestor or a narrow segment of interested persons;

(4) Whether the contribution to public understanding of government operations or activities will be "significant;"

(5) Whether the requester has a commercial interest that would be furthered by the requested disclosure; and

(6) Whether the magnitude of any identified commercial interest to the requestor is sufficiently large in comparison with the public interest in disclosure, that disclosure is primarily in the commercial interest of the requestor.

As a requester, you bear the burden under the FOIA of showing that the fee waiver requirements have been met. Based on my review of your October 26, 2015 letter and for the reasons stated herein, I have determined that your fee waiver request is deficient because your request failed to meet factors 3 and 4 set forth above. Since your request for a fee waiver has failed to satisfy each of the required factors, I am denying your fee waiver request.

As it relates to your request for expedited treatment, your request is denied.

Under the DHS FOIA regulation, expedited processing of a FOIA request is warranted if the request involves "circumstances in which the lack of expedited treatment could reasonably be expected to pose an imminent threat to the life or physical safety of an individual," 6 C.F.R. § 5.5(d)(1)(i), or "an urgency to inform the public about an actual or alleged federal government activity, if made by a person primarily engaged in disseminating information," 6 C.F.R. § 5.5(d)(l)(ii). Requesters that seek expedited processing must submit a statement explaining in detail the basis for the request, and that statement must be certified by the requester to be true and correct. 6 C.F.R. § 5.5(d)(3).

Your request for expedited processing is denied because you do not qualify for either category. You failed to demonstrate a particular urgency to inform the public about the government activity involved in the request beyond the public's right to know about government activity generally. Your letter was conclusory in nature and did not present any facts to justify a grant of expedited processing under the applicable standards.

Provisions of the Act allow us to recover part of the cost of complying with your request. We shall charge you for records in accordance with the DHS Interim FOIA regulations as they apply to non-commercial requestors. As a non-commercial requestor you will be charged 10-cents a page for duplication, although the first 100 pages are free, as are the first two hours of search time, after which you will pay the per quarter-hour rate ($4.00, $7.00, $10.25) of the searcher. We will construe the submission of your request as an agreement to pay up to $25.00. You will be contacted before any further fees are accrued.

If you deem the decision to deny your blanket fee waiver or expedited treatment of your request an adverse determination, you may exercise your appeal rights. Should you wish to do so, you must send your appeal and a copy of this letter within 60 days of receipt of this letter to: Associate General Counsel (General Law), U.S. Department of Homeland Security, Washington, DC 20528, following the procedures outlined in Subpart A, Section 5.9, of the DHS Regulations. Your envelope and letter should be marked "Freedom of Information Act Appeal." Copies of the DHS regulations are available at: www.dhs.gov/foia.

We have queried the appropriate office of S&T for responsive records. If any responsive records are located, they will be reviewed for determination of releasability. Please be assured that one of the processors in our office will respond to your request as expeditiously as possible. We appreciate your patience as we proceed with your request.

Your request has been assigned reference number **2016-STFO-00023**. Please refer to this identifier in any future correspondence and to check the status of your request at http://www.dhs.gov/foia-status. You may contact this office at stfoia@hq.dhs.gov or (202) 254-8801.

Sincerely,

*Gina Goldblatt*

Gina Goldblatt
Government Information Specialist



**Homeland Security**

Science and Technology

February 1, 2016

Larry Golden
740 Woodruff Road #1102
Greenville, South Carolina 29607

Re: **2016-STFO-00024**

Dear Mr. Golden:

This acknowledges receipt of your October 26, 2015, Freedom of Information Act (FOIA) request to the Department of Homeland Security (DHS), Science and Technology Directorate (S&T) for the synopsis, award amount, posted date, company awarded, type of award, total amount awarded, description of products or services, and specification of products related to Broad Agency Announcement (BAA) 09-15. You are requesting a fee waiver and expedited processing. Your request was received in this office on January 27, 2016.

Due to the increasing number of FOIA requests received by this office, we may encounter some delay in processing your request. Per Section 5.5(a) of the DHS FOIA regulations, 6 C.F.R. Part 5, the Department processes FOIA requests according to their order of receipt. Although DHS' goal is to respond within 20 business days of receipt of your request, the FOIA does permit a 10-day extension of this time period. As your request seeks numerous documents that will necessitate a thorough and wide-ranging search, DHS will invoke a 10-day extension for your request, as allowed by Title 5 U.S.C. § 552(a)(6)(B). If you care to narrow the scope of your request, please contact our office. We will make every effort to comply with your request in a timely manner.

As it relates to your fee waiver request, I have reviewed your letter thoroughly and have determined that you have not presented a convincing argument that you are entitled to a blanket waiver of fees.

The DHS FOIA Regulations, 6 CFR § 5.11(k)(2), set forth six factors to examine in determining whether the applicable legal standard for a fee waiver has been met. We will consider these factors in our evaluation of your request for a fee waiver:

(1) Whether the subject of the requested records concerns "the operations or activities of the government;"

(2) Whether the disclosure is "likely to contribute" to an understanding of government operations or activities;

(3) Whether disclosure of the requested information will contribute to the understanding of the public at large, as opposed to the individual understanding of the requestor or a narrow segment of interested persons;

(4) Whether the contribution to public understanding of government operations or activities will be "significant;"

(5) Whether the requester has a commercial interest that would be furthered by the requested disclosure; and

(6) Whether the magnitude of any identified commercial interest to the requestor is sufficiently large in comparison with the public interest in disclosure, that disclosure is primarily in the commercial interest of the requestor.

As a requester, you bear the burden under the FOIA of showing that the fee waiver requirements have been met. Based on my review of your October 26, 2015 letter and for the reasons stated herein, I have determined that your fee waiver request is deficient because your request failed to meet factors 3 and 4 set forth above. Since your request for a fee waiver has failed to satisfy each of the required factors, I am denying your fee waiver request.

As it relates to your request for expedited treatment, your request is denied.

Under the DHS FOIA regulation, expedited processing of a FOIA request is warranted if the request involves "circumstances in which the lack of expedited treatment could reasonably be expected to pose an imminent threat to the life or physical safety of an individual," 6 C.F.R. § 5.5(d)(1)(i), or "an urgency to inform the public about an actual or alleged federal government activity, if made by a person primarily engaged in disseminating information," 6 C.F.R. § 5.5(d)(l)(ii). Requesters that seek expedited processing must submit a statement explaining in detail the basis for the request, and that statement must be certified by the requester to be true and correct. 6 C.F.R. § 5.5(d)(3).

Your request for expedited processing is denied because you do not qualify for either category. You failed to demonstrate a particular urgency to inform the public about the government activity involved in the request beyond the public's right to know about government activity generally. Your letter was conclusory in nature and did not present any facts to justify a grant of expedited processing under the applicable standards.

Provisions of the Act allow us to recover part of the cost of complying with your request. We shall charge you for records in accordance with the DHS Interim FOIA regulations as they apply to non-commercial requestors. As a non-commercial requestor you will be charged 10-cents a page for duplication, although the first 100 pages are free, as are the first two hours of search time, after which you will pay the per quarter-hour rate ($4.00, $7.00, $10.25) of the searcher. We will construe the submission of your request as an agreement to pay up to $25.00. You will be contacted before any further fees are accrued.

If you deem the decision to deny your blanket fee waiver or expedited treatment of your request an adverse determination, you may exercise your appeal rights. Should you wish to do so, you must send your appeal and a copy of this letter within 60 days of receipt of this letter to: Associate General Counsel (General Law), U.S. Department of Homeland Security, Washington, DC 20528, following the procedures outlined in Subpart A, Section 5.9, of the DHS Regulations. Your envelope and letter should be marked "Freedom of Information Act Appeal." Copies of the DHS regulations are available at: www.dhs.gov/foia.

We have queried the appropriate office of S&T for responsive records.  If any responsive records are located, they will be reviewed for determination of releasability.  Please be assured that one of the processors in our office will respond to your request as expeditiously as possible.  We appreciate your patience as we proceed with your request.

Your request has been assigned reference number **2016-STFO-00024.**  Please refer to this identifier in any future correspondence and to check the status of your request at http://www.dhs.gov/foia-status.  You may contact this office at stfoia@hq.dhs.gov or (202) 254-8801.

Sincerely,

*Gina Goldblatt*

Gina Goldblatt
Government Information Specialist

U.S. Department of Homeland Security
Washington, DC 20528



**Homeland
Security**

Science and Technology

January 19, 2016

Larry Golden
740 Woodruff Road 1102
Greenville, South Carolina 29607

Re: **2016-STFO-00020**

Dear Mr. Golden:

This letter is the acknowledgement and final response to your October 26, 2015 Freedom of
Information Act (FOIA) request addressed to the Department of Homeland Security (DHS)
Science and Technology Directorate (S&T). You submitted 4 FOIA requests seeking numerous
synopsis descriptions, published date, company awarded, type of award, total amount awarded,
description of products or services, and specifications of products for BAA 07-02A. We have
aggregated all 4 of your requests for processing. Your request was received in this office on
January 11, 2016.

Pursuant to 5 U.S.C. §§552(a)(1) and (a)(2), DHS need not make available under the FOIA
records that are published elsewhere. Information responsive to your request can be accessed
online at
https://www.fbo.gov/index?s=opportunity&mode=form&id=3937efd7f95f0c773b9a7bc99eab89
e8&tab=core&_cview=0

If you deem this advisement an adverse determination, you may exercise your appeal rights.
Should you wish to do so, you must send your appeal and a copy of this letter, within 60 days of
the date of this letter, to: Associate General Counsel (General Law), Mail Stop 0655 U.S.
Department of Homeland Security, Washington, DC 20528, following the procedures outlined in
the DHS FOIA regulations at 6 C.F.R. § 5.9. Your envelope and letter should be marked "FOIA
Appeal." Copies of the FOIA and DHS regulations are available at www.dhs.gov/foia.

The Office of Government Information Services (OGIS) also mediates disputes between FOIA
requesters and Federal agencies as a non-exclusive alternative to litigation. If you are requesting
access to your own records (which is considered a Privacy Act request), you should know that
OGIS does not have the authority to handle requests made under the Privacy Act of 1974. If you
wish to contact OGIS, you may email them at ogis@nara.gov or call 1-877-684-6448.

Provisions of the FOIA allow us to recover part of the cost of complying with your request.  In this instance, because the cost is below the $14 minimum, there is no charge.

If you need to contact our office concerning this request, please contact stfoia@hq.dhs.gov or (202) 254-6342 and refer to **2016-STFO-00020**.

Sincerely,

Katrina Hagan
FOIA Officer



U.S. Department of Homeland Security
Washington, DC 20528

February 1, 2016

Larry Golden
740 Woodruff Road #1102
Greenville, South Carolina 29607

Re: **2016-STFO-00017**

Dear Mr. Golden:

This is the final response to your Freedom of Information Act (FOIA) request to the Department of Homeland Security (DHS), Science and Technology Directorate (S&T) dated October 26, 2015 and received by this office on December 28, 2015.  You are seeking the synopsis, award amount, posted date, company awarded, type of award, total amount awarded, description of products or services, and specification of products related to Broad Agency Announcement (BAA) 09-17.

We conducted a comprehensive search for records within S&T's Office of Procurement Operations (OPO) that would be responsive to your request.  A search of the Small Business Innovation Research (SBIR) database for the key terms solicitation number 09-17 was completed. Unfortunately, we were unable to locate or identify any responsive records.

While an adequate search was conducted, you have the right to appeal this determination that no records exist within S&T that would be responsive to your request.  Should you wish to do so, you must send your appeal and a copy of this letter, within 60 days of the date of this letter, to: Associate General Counsel (General Law), Mailstop 0655, U.S. Department of Homeland Security, Washington, DC 20528, following the procedures outlined in the DHS FOIA regulations at 6 C.F.R. § 5.9.  Your envelope and letter should be marked "FOIA Appeal." Copies of the FOIA and DHS regulations are available at www.dhs.gov/foia.

The Office of Government Information Services (OGIS) also mediates disputes between FOIA requesters and Federal agencies as a non-exclusive alternative to litigation. If you are requesting access to your own records (which is considered a Privacy Act request), you should know that OGIS does not have the authority to handle requests made under the Privacy Act of 1974. If you wish to contact OGIS, you may email them at ogis@nara.gov or call 1-877-684-6448.

Provisions of the FOIA allow us to recover part of the cost of complying with your request.  In this instance, because the cost is below the $14 minimum, there is no charge.

If you need to contact our office concerning this request, please contact stfoia@hq.dhs.gov or (202) 254-8801 and refer to **2016-STFO-00017.**

Sincerely,

*Gina Goldblatt*

Gina Goldblatt
Government Information Specialist



U.S. Department of Homeland Security
Washington, DC 20528

# Homeland
# Security

Science and Technology

February 3, 2016

Larry Golden
740 Woodruff Road #1102
Greenville, South Carolina 29607

Re: **2016-STFO-00018**

Dear Mr. Golden:

This is the final response to your Freedom of Information Act (FOIA) request to the Department of Homeland Security (DHS), Science and Technology Directorate (S&T) dated October 26, 2015 and received by this office on January 8, 2016. You are seeking the synopsis, award amount, posted date, company awarded, type of award, total amount awarded, description of products or services, and specification of products related to Broad Agency Announcement (BAA) 12-102.

We conducted a comprehensive search for records within S&T's Office of Procurement Operations (OPO) that would be responsive to your request. A search of the Small Business Innovation Research (SBIR) database for the key terms solicitation number 12-102 was completed. Unfortunately, we were unable to locate or identify any responsive records.

While an adequate search was conducted, you have the right to appeal this determination that no records exist within S&T that would be responsive to your request. Should you wish to do so, you must send your appeal and a copy of this letter, within 60 days of the date of this letter, to: Associate General Counsel (General Law), Mailstop 0655, U.S. Department of Homeland Security, Washington, DC 20528, following the procedures outlined in the DHS FOIA regulations at 6 C.F.R. § 5.9. Your envelope and letter should be marked "FOIA Appeal." Copies of the FOIA and DHS regulations are available at www.dhs.gov/foia.

The Office of Government Information Services (OGIS) also mediates disputes between FOIA requesters and Federal agencies as a non-exclusive alternative to litigation. If you are requesting access to your own records (which is considered a Privacy Act request), you should know that OGIS does not have the authority to handle requests made under the Privacy Act of 1974. If you wish to contact OGIS, you may email them at ogis@nara.gov or call 1-877-684-6448.

Provisions of the FOIA allow us to recover part of the cost of complying with your request. In this instance, because the cost is below the $14 minimum, there is no charge.

If you need to contact our office concerning this request, please contact stfoia@hq.dhs.gov or (202) 254-8801 and refer to **2016-STFO-00018.**

Sincerely,

*Gina Goldblatt*

Gina Goldblatt
Government Information Specialist

U.S. Department of Homeland Security
Washington, DC 20528



Science and Technology

February 16, 2016

Larry Golden
740 Woodruff Road #1102
Greenville, South Carolina 29607

Re:  **FOIA Request 2016-STFO-00024**

Dear Mr. Golden:

This is in further response to your Freedom of Information Act (FOIA) request to the
Department of Homeland Security (DHS), Science and Technology Directorate (S&T) on
October 26, 2015.  You submitted 4 FOIA requests seeking numerous synopsis descriptions,
published date, company awarded, type of award, total amount awarded, description of products
or services, and specifications of products for BAA 09-15.  We have aggregated all 4 of your
requests for processing.

We conducted a comprehensive search for records within S&T's Office of Procurement
Operations (OPO) that would be responsive to your request.  A search of the Small Business
Innovation Research (SBIR) database for the key terms solicitation number 09-15 was
completed. Unfortunately, we were unable to locate or identify any responsive records.

While an adequate search was conducted, you have the right to appeal this determination that no
records exist within S&T that would be responsive to your request.  Should you wish to do so,
you must send your appeal and a copy of this letter, within 60 days of the date of this letter, to:
Associate General Counsel (General Law), Mailstop 0655, U.S. Department of Homeland
Security, Washington, DC 20528, following the procedures outlined in the DHS FOIA
regulations at 6 C.F.R. § 5.9.  Your envelope and letter should be marked "FOIA Appeal."
Copies of the FOIA and DHS regulations are available at www.dhs.gov/foia.

The Office of Government Information Services (OGIS) also mediates disputes between FOIA
requesters and Federal agencies as a non-exclusive alternative to litigation. If you are requesting
access to your own records (which is considered a Privacy Act request), you should know that
OGIS does not have the authority to handle requests made under the Privacy Act of 1974. If you
wish to contact OGIS, you may email them at ogis@nara.gov or call 1-877-684-6448.

Provisions of the FOIA allow us to recover part of the cost of complying with your request.  In
this instance, because the cost is below the $14 minimum, there is no charge.

During our search for records, I have determined that the information you are seeking is under
the purview of the Office of Secretary of Defense.  Therefore, I am transferring the request to the

FOIA Officer for the OSD/JS FOIA Requester Service Center Office of Freedom of Information 1155 Defense Pentagon Washington, DC 20301-1155. The telephone number is 1-866-574-4970.

If you need to contact our office again about this matter, please refer to **2016-STFO-00024.** This office can be reached at stfoia@hq.dhs.gov or (202) 254-8801.

Sincerely,

*Gina Goldblatt*

Gina Goldblatt
Government Information Specialist



U.S. Department of Homeland Security
Washington, DC 20528

**Homeland Security**

Science and Technology

February 19, 2016

Larry Golden
740 Woodruff Road #1102
Greenville, South Carolina 29607

Re: **2016-STFO-00023**

Dear Mr. Golden:

This is the final response to your Freedom of Information Act (FOIA) request to the Department of Homeland Security (DHS), Science and Technology Directorate (S&T) dated October 26, 2015 and received by this office on January 27, 2016. You are seeking the synopsis, award amount, posted date, company awarded, type of award, total amount awarded, description of products or services, and specification of products related to Long Range Broad Agency Announcement (LRBAA) 08-01. We have aggregated all 8 of your requests for processing.

We conducted a comprehensive search for records within S&T's Office of Procurement Operations (OPO) that would be responsive to your request. A search of the Small Business Innovation Research (SBIR) database for the key terms solicitation number 08-01 was completed. Unfortunately, we were unable to locate or identify any responsive records.

While an adequate search was conducted, you have the right to appeal this determination that no records exist within S&T that would be responsive to your request. Should you wish to do so, you must send your appeal and a copy of this letter, within 60 days of the date of this letter, to: Associate General Counsel (General Law), Mailstop 0655, U.S. Department of Homeland Security, Washington, DC 20528, following the procedures outlined in the DHS FOIA regulations at 6 C.F.R. § 5.9. Your envelope and letter should be marked "FOIA Appeal." Copies of the FOIA and DHS regulations are available at www.dhs.gov/foia.

The Office of Government Information Services (OGIS) also mediates disputes between FOIA requesters and Federal agencies as a non-exclusive alternative to litigation. If you are requesting access to your own records (which is considered a Privacy Act request), you should know that OGIS does not have the authority to handle requests made under the Privacy Act of 1974. If you wish to contact OGIS, you may email them at ogis@nara.gov or call 1-877-684-6448.

Provisions of the FOIA allow us to recover part of the cost of complying with your request. In this instance, because the cost is below the $14 minimum, there is no charge.

If you need to contact our office concerning this request, please contact stfoia@hq.dhs.gov or (202) 254-8801 and refer to **2016-STFO-00023.**

Sincerely,

*Gina Goldblatt*

Gina Goldblatt
Government Information Specialist



U.S. Department of Homeland Security
Washington, DC 20528

Science and Technology

January 12, 2016


Larry Golden
740 Woodruff Road #1102
Greenville, South Carolina 29607


Re:  **2016-STFO-00011**

Dear Mr. Golden:

This acknowledges receipt of your October 26, 2015, Freedom of Information Act (FOIA) request to the Department of Homeland Security (DHS), Science and Technology Directorate (S&T) for the synopsis, award amount, posted date, company awarded, type of award, total amount awarded, description of products or services, and specification of products related to LRBAA 11-03. We have aggregated all 12 of your requests for LRBAA 11-03. You are requesting a fee waiver and expedited processing. Your request was received in this office on January 8, 2016.

Due to the increasing number of FOIA requests received by this office, we may encounter some delay in processing your request. Per Section 5.5(a) of the DHS FOIA regulations, 6 C.F.R. Part 5, the Department processes FOIA requests according to their order of receipt. Although DHS' goal is to respond within 20 business days of receipt of your request, the FOIA does permit a 10-day extension of this time period. As your request seeks numerous documents that will necessitate a thorough and wide-ranging search, DHS will invoke a 10-day extension for your request, as allowed by Title 5 U.S.C. § 552(a)(6)(B). If you care to narrow the scope of your request, please contact our office. We will make every effort to comply with your request in a timely manner.

As it relates to your fee waiver request, I have reviewed your letter thoroughly and have determined that you have not presented a convincing argument that you are entitled to a blanket waiver of fees.

The DHS FOIA Regulations, 6 CFR § 5.11(k)(2), set forth six factors to examine in determining whether the applicable legal standard for a fee waiver has been met. We will consider these factors in our evaluation of your request for a fee waiver:

(1) Whether the subject of the requested records concerns "the operations or activities of the government;"

(2) Whether the disclosure is "likely to contribute" to an understanding of government operations or activities;

(3) Whether disclosure of the requested information will contribute to the understanding of the public at large, as opposed to the individual understanding of the requestor or a narrow segment of interested persons;

(4) Whether the contribution to public understanding of government operations or activities will be "significant;"

(5) Whether the requester has a commercial interest that would be furthered by the requested disclosure; and

(6) Whether the magnitude of any identified commercial interest to the requestor is sufficiently large in comparison with the public interest in disclosure, that disclosure is primarily in the commercial interest of the requestor.

As a requester, you bear the burden under the FOIA of showing that the fee waiver requirements have been met. Based on my review of your October 26, 2015 letter and for the reasons stated herein, I have determined that your fee waiver request is deficient because your request failed to meet factors 3 and 4 set forth above. Since your request for a fee waiver has failed to satisfy each of the required factors, I am denying your fee waiver request.

As it relates to your request for expedited treatment, your request is denied.

Under the DHS FOIA regulation, expedited processing of a FOIA request is warranted if the request involves "circumstances in which the lack of expedited treatment could reasonably be expected to pose an imminent threat to the life or physical safety of an individual," 6 C.F.R. § 5.5(d)(1)(i), or "an urgency to inform the public about an actual or alleged federal government activity, if made by a person primarily engaged in disseminating information," 6 C.F.R. § 5.5(d)(l)(ii). Requesters that seek expedited processing must submit a statement explaining in detail the basis for the request, and that statement must be certified by the requester to be true and correct. 6 C.F.R. § 5.5(d)(3).

Your request for expedited processing is denied because you do not qualify for either category. You failed to demonstrate a particular urgency to inform the public about the government activity involved in the request beyond the public's right to know about government activity generally. Your letter was conclusory in nature and did not present any facts to justify a grant of expedited processing under the applicable standards.

Provisions of the Act allow us to recover part of the cost of complying with your request. We shall charge you for records in accordance with the DHS Interim FOIA regulations as they apply to non-commercial requestors. As a non-commercial requestor you will be charged 10-cents a page for duplication, although the first 100 pages are free, as are the first two hours of search time, after which you will pay the per quarter-hour rate ($4.00, $7.00, $10.25) of the searcher.

We will construe the submission of your request as an agreement to pay up to $25.00. You will be contacted before any further fees are accrued.

If you deem the decision to deny your blanket fee waiver or expedited treatment of your request an adverse determination, you may exercise your appeal rights. Should you wish to do so, you must send your appeal and a copy of this letter within 60 days of receipt of this letter to: Associate General Counsel (General Law), U.S. Department of Homeland Security, Washington, DC 20528, following the procedures outlined in Subpart A, Section 5.9, of the DHS Regulations. Your envelope and letter should be marked "Freedom of Information Act Appeal." Copies of the DHS regulations are available at: www.dhs.gov/foia.

We have queried the appropriate office of S&T for responsive records. If any responsive records are located, they will be reviewed for determination of releasability. Please be assured that one of the processors in our office will respond to your request as expeditiously as possible. We appreciate your patience as we proceed with your request.

Your request has been assigned reference number **2016-STFO-00011.** Please refer to this identifier in any future correspondence and to check the status of your request at http://www.dhs.gov/foia-status. You may contact this office at stfoia@hq.dhs.gov or (202) 254-6342.

Sincerely,

Katrina Hagan
FOIA Officer

**Retail**

**PRESS FIRMLY**



UNITED STATES
POSTAL SERVICE®

20439

RDC 07

U.S. POSTAGE PAID
PME
GREENVILLE, SC 29616
SEP 12, 2024

**$30.65**

S2324K504179-13

RIORITY MAIL EX
POSTAGE REQUI



**PRIORITY
MAIL
EXPRESS®**



EI 975 707 106 US

**CUSTOMER USE ONLY**

FROM: (PLEASE PRINT)  PHONE 864 288-5605

LARRY GOLDEN
740 WOODRUFF RD.
#1102
GREENVILLE, SC 29607

**DELIVERY OPTIONS (Customer Use Only)**

☒ SIGNATURE REQUIRED *Note: The mailer must check the "Signature Required" box if the mailer: 1) Requires the addressee's signature; OR 2) Purchases additional insurance; OR 3) Purchases COD service; OR 4) Purchases Return Receipt service. If the box is not checked, the Postal Service will leave the item in the addressee's mail receptacle or other secure location without attempting to obtain the addressee's signature on delivery.*

**Delivery Options**
☐ No Saturday Delivery (delivered next business day)
☐ Sunday/Holiday Delivery Required (additional fee, where available*)
*Refer to USPS.com® or local Post Office™ for availability.

TO: (PLEASE PRINT)  PHONE 202, 275-8000

U.S. COURT OF APPEALS FOR THE FEDERAL
CIR.
CASE No. 24-2256
717 MADISON PLACE, NW
WASHINGTON, DC
ZIP + 4® (U.S. ADDRESSES ONLY)

2 0 4 3 9 -

■ For pickup or USPS Tracking™, visit USPS.com or call 800-222-1811.
■ $100.00 insurance included.

◄ **PEEL FROM THIS CORNER**

**PAYMENT BY ACCOUNT (if applicable)**
Federal Agency Acct. No. or Postal Service™ Acct. No.

**ORIGIN (POSTAL SERVICE USE ONLY)**

| ☒ 1-Day | ☐ 2-Day | ☐ Military | ☐ DPO |
|---|---|---|---|
| PO ZIP Code | Scheduled Delivery Date (MM/DD/YY) | Postage | |
| 29415 | 9-13-24 | $ 30.45 | |
| Date Accepted (MM/DD/YY) | Scheduled Delivery Time | Insurance Fee | COD Fee |
| 9·12·24 | ☐ 6:00 PM | $ | $ |
| Time Accepted | | Return Receipt Fee | Live Animal Transportation Fee |
| 1.24 ☐ AM ☒ PM | | $ | $ |
| Special Handling/Fragile | Sunday/Holiday Premium Fee | Total Postage & Fees | |
| $ | $ 30.65 | | |
| Weight | ☐ Flat Rate  Acceptance Employee Initials | | |
| 15.80 lbs. ozs. | 8m | $ | |

**DELIVERY (POSTAL SERVICE USE ONLY)**

| Delivery Attempt (MM/DD/YY) | Time | | Employee Signature |
|---|---|---|---|
| | | ☐ AM ☐ PM | |
| Delivery Attempt (MM/DD/YY) | Time | | Employee Signature |
| | | ☐ AM ☐ PM | |

LABEL 11-B, NOVEMBER 2023    PSN 7690-02-000-9996